UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

MICHAEL PATTERSON,

                      PLAINTIFF,

-against-

EMBLEMHEALTH INC., and, BLANCA VAZQUEZ-CUZCO,

                      DEFENDANTS.

---------------------------------------------------------------X

CASE NO.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Michael Patterson ("Patterson" or "Plaintiff"), by and through undersigned counsel, complains about Defendants Emblemhealth Inc. ("Emblemhealth") and Blanca Vazquez-Cuzco ("Vazquez-Cuzco") as follows:

## NATURE OF ACTION

1. This is an action for injunctive and declaratory relief, reinstatement, back pay, front pay, compensatory and punitive damages, attorneys' fees, costs and other relief to redress employment discrimination on the basis of disability, perceived disability, and retaliation against Plaintiff because of his need for and use of reasonable accommodation of his disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, as amended, and the New York City Human Rights Law ("NYCHRL"), § 8-101 *et seq.*, as amended.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3. The Court has jurisdiction over Plaintiff's NYCHRL claims pursuant to 28 U.S.C. § 1367 because those claims closely relate to Plaintiff's claims under the ADA, having arisen from a common nucleus of operative facts, such that all claims form part of the same case or controversy.

4. Defendants are subject to personal jurisdiction in New York.

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because all of the events or omissions giving rise to the claims occurred within this judicial district.

6. Pursuant to § 8-502(c) of the NYCHRL, at the time of the filing of this Complaint, Plaintiff served a copy on the City of New York Commission on Human Rights.

## THE PARTIES

7. Patterson is a resident of Kings County in the State of New York.

8. Emblemhealth is a not-for-profit corporation incorporated in the State of New York with its main corporate office located in New York County.

9. Emblemhealth has approximately 5000 total employees, including more than four working within the five boroughs of New York City, and is an employer within the meaning of NYCHRL §8-102, and Title I of the ADA.

10. Upon information and belief, Vazquez-Cuzco is a resident of Queens County in the State of New York.

11. Vazquez-Cuzco is an employer within the meaning of NYCHRL §8-107(13)(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. On or about December 31, 2020, Patterson filled a Charge of Discrimination alleging discrimination on the basis of his disability or perceived disability with the United States Equal Employment Opportunity Commission ("EEOC").

13. Patterson received his Notice of Right to Sue Letter from the EEOC on December 22, 2021 and this lawsuit was filed within ninety (90) days of receipt of his Right to Sue Letter.

## FACTS RELEVANT TO ALL CLAIMS

14. Patterson worked for Emblemhealth as a Facilitated Enrollment Specialist from March 16, 2020 until September 1, 2020.

15. Prior to working at Emblemhealth, Patterson worked for United Healthcare as an enrollment representative for ten (10) years.

16. During his tenure at United Healthcare, Patterson developed relationships with various administrators within the Department of Employment Work Force Solution at the New York State Department of Labor ("NYS DOL"), who enabled him to enroll unemployed New Yorkers eligible for Medicaid or other government-subsidized health care insurance plans through the New York State Department of Health's website.

17. In his new position, Patterson intended to use his contacts at the NYS DOL to develop a new pipeline of Medicaid-eligible enrollees for Emblemhealth.

18. Patterson's first day at Emblemhealth occurred on Monday, March 16, 2020, approximately one week before then-Governor Andrew Cuomo issued an Executive Order closing non-essential businesses because of the COVID-19 pandemic. *See* Executive Order No. 202.6.

19. On March 16, 2020, Patterson arrived for his new employee orientation at Emblemhealth's main corporate offices located at 55 Water Street in Manhattan.

20. At Emblemhealth's main corporate offices, Patterson and numerous other new hires were given laptops and told to go home and wait for further instructions without being provided with an orientation because of wide-spread panic regarding the spread of COVID-19.

21. Patterson began to work for Emblemhealth from home starting the following day, on March 17, 2020.

22. Patterson began reporting to Vazquez-Cuzco, whose title at Emblemhealth at all relevant times has been Marketplace Sales Manager.

23. In or about June 2020, Emblemhealth announced that enrollment representatives like Patterson would no longer work from home and would be expected to work in field offices located in the Bronx or upper Manhattan.

24. In or about June 2020, Patterson shared with Vazquez-Cuzco that he was experiencing severe on-going respiratory difficulties that affected his ability to breath, which Plaintiff's primary health care physician believed was caused by COVID-19.

25. Patterson informed Vazquez-Cuzco that he went to his primary care physician starting in February 2020 for help with a severe respiratory condition, which caused him to develop a constant, deep guttural cough and experience shortness of breath that was so bad Plaintiff felt like he could not catch his breath and could suffocate.

26. At first, Patterson's doctor treated him for pneumonia and prescribed to him antibiotics and steroids, which improved his cough enough so that Plaintiff was able to avoid hospitalization.

27. In or about April 2020, Patterson's physician called to inform him that she now believed he was her first patient with COVID-19.

28. During the Spring of 2020, Patterson's cough and shortness of breath persisted and became severe again. Patterson had difficulty breathing, felt winded after walking short distances, coughed constantly, and experienced a loss of his voice, which was similar to having laryngitis. Patterson also became panicked at night on a regular basis because he constantly woke up from sleep with the feeling that he was suffocating.

29. Patterson's doctor urged him to come in for more testing and possible treatment with respiratory specialists.

30. In or about May 2020, Patterson went to see his primary care physician who administered a COVID-19 test, but the results did not reveal any antibodies from the disease.

31. Nevertheless, Patterson's doctor believed that his respiratory condition was caused by COVID-19 and sent Plaintiff to a pulmonologist and an ear-nose-throat specialist for additional testing and treatment.

32. To determine if employees like Patterson could safely return to work in the field, Emblemhealth issued to its workforce a computer-based application that required the employee to report whether or not they were experiencing symptoms that demonstrated illness, such as a fever or coughing.

33. Patterson used the application to report to Emblemhealth that he suffered from a severe cough, and when he did that, the application raised a red flag indicating he would not be permitted to return to work in the field pursuant to Emblemhealth's own policies.

34. In June 2020, Patterson related all of this information to Vazquez-Cuzco regarding his respiratory condition, his doctor's belief that his condition was caused by COVID-19, and his need for treatment with the specialists, including the ear-nose-and-throat doctor and the pulmonologist who he had appointments with that would extend to September 2020.

35. Vazquez-Cuzco indicated that she understood Plaintiff required a "reasonable accommodation" of his disability in the form of the ability to work from home although Plaintiff and Vazquez-Cuzco did not use those words.

36. Vazquez-Cuzco informed Patterson that Defendants would permit him to work from home until all of his additional testing by the specialists was completed.

37. Vazquez-Cuzco specifically informed Patterson that under the circumstances as he described, it would be a violation of the Emblemhealth's own policy for him to work in the field because he could be at risk of spreading COVID-19 to others and of getting sicker himself.

38. As a result, Patterson continued to work from home throughout June, July and August 2020.

39. During that time-period, Patterson requested intermittent medical leave during work hours so that he could attend COVID-19 related health care appointments, which was a reasonable accommodation of his disability, although Plaintiff never used the works "reasonable accommodation" when notifying Defendants of his need for this accommodation.

40. At that time, Vazquez-Cuzco did not object to Patterson's requests for a reasonable accommodation of his disability in the form of intermittent medical leave to attend various doctors' appointments.

41. However, during the summer of 2020, Patterson noticed that Vazquez-Cuzco began to send him reports about his work productivity. The productivity reports stated that Patterson was expected to sign up five (5) new enrollees per day.

42. Prior to the COVID-19 pandemic shut-down of New York City non-essential businesses, during interviews for the job at Emblemhealth, Angel Rosario, Vice President of Market Place and Small Groups, informed Patterson that enrollment representatives were expected to achieve a weekly quota.

43. Because of Patterson's NYS DOL contacts, his enrollee numbers were often much higher than the goals set by Emblemhealth management.

44. However, after the COVID-19 pandemic shut-down all non-essential business in New York City (including non-essential governmental agency business such as at NYS DOL), there were many days when Patterson did not achieve the five-enrollee quota per day.

45. When the NYS DOL office in downtown Manhattan closed in late March 2020, Patterson's pipeline of Medicaid-eligible unemployed New Yorkers was reduced to a few calls per week from his contacts at NYS DOL about specific individuals.

46. Although Patterson's enrollment numbers suffered because of the challenges presented by the COVID-19 pandemic, Plaintiff is aware that other Emblemhealth enrollment representatives had similar problems, and did not achieve their enrollment numbers.

47. Importantly, no one at Emblemhealth, including but not limited to Vazquez-Cuzco, ever informed Patterson that he was at risk of losing his job if he did not achieve the five-enrollee quota per day.

48. Instead, Vazquez-Cuzco constantly told Patterson that Emblemhealth required him to continue to work from home until he was fully recuperated.

49. For example, in an e-mail she sent Patterson on July 27, 2020, Vazquez-Cuzco wrote: "As per our phone conversation, your health is very important to us, let's continue to work remotely until you see the Dr. or the coughs disappears."

50. In early August 2020, Vazquez-Cuzco asked Patterson if he believed it would be possible for him to return to work in the field by September 16, 2020.

51. Patterson informed Vazquez-Cuzco that by September 16, 2020 he expected to be finished with scheduled doctor's appointments and various testing being performed by the pulmonologist and the ear-nose-throat specialist to whom he had been referred for care by his primary care physician.

52. However, Defendants never permitted Patterson return to work in the field starting on September 16, 2020 as Vazquez-Cuzco stated.

53. Indeed, Patterson was not actually granted reasonable accommodation in the form of leave to work from home and medical leave to attend additional doctor's appointments until September 16, 2020 in violation of the NYCHRL, N.Y.C. Admin. Code §8-102(16), because he was punished by Defendants with termination of his employment for taking that leave.

54. Defendants also retaliated against Patterson for having needed that reasonable accommodation, in violation of the NYCHRL, N.Y.C. Admin. Code §8-107(7)(v).

55. On September 1, 2020 at 10 a.m., Patterson received a call from Vazquez-Cuzco, her boss, Annie Wu, and Diane McGuire from Emblemhealth's Human Resources Department.

56. During that phone call, Vazquez-Cuzco informed Patterson for the first time that his work performance was "a serious problem" and he was being fired for alleged work performance deficiencies.

57. Defendants' stated reason for firing Patterson was false and a pretext for discrimination against Plaintiff based on disability or perceived disability and for retaliation against Plaintiff for his request for medical leave and his request to work from home as reasonable accommodations of his disability.

58. Although Patterson had previously acknowledged to Vazquez-Cuzco that he knew he was not making his quota every day, Vazquez-Cuzco assured him that she believed his numbers would improve when he returned to work in the field and when the NYSDOL office opened up.

59. Due to the unlawful actions of Defendants, Patterson has suffered loss of income and fringe benefits which would have accrued to him.

60. Due to the unlawful actions of Defendants, Plaintiff has suffered and continues to suffer emotional distress, mental anguish, humiliation and damage to his reputation.

## COUNT I

## DISABILITY DISCRIMINATION IN VIOLATION OF ADA

61. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as if fully set forth herein.

62. At all relevant times to this action, Defendant Emblemhealth employed Plaintiff within the meaning of the ADA.

63. By the acts and practices described herein, Emblemhealth discriminated against Plaintiff on the basis of his disability in violation of the ADA, which culminated in his termination of employment, in violation of the ADA.

64. Emblemhealth acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected federal rights.

## COUNT II

## PERCEIVED DISABILITY DISCRIMINATION IN VIOLATION OF ADA

65. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as if fully set forth herein.

66. At all relevant times to this action, Defendant Emblemhealth employed Plaintiff within the meaning of the ADA.

67. By the acts and practices described herein, Emblemhealth discriminated against Plaintiff on the basis of his perceived disability in violation of the ADA, which culminated in his termination of employment, in violation of the ADA.

68. Emblemhealth acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected federal rights.

## COUNT III

### DISABILITY DISCRIMINATION IN VIOLATION OF NYCHRL

69. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as if fully set forth herein.

70. Defendants' acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of his disability in violation of the NYCHRL, §§ 8-102(16) and 8-107(a)(a) of the Administrative Code of the City of New York.

71. Pursuant to section 8-107(13)(b) of the NYCHRL, Defendants are strictly liable for the intentional discrimination perpetrated by Defendant Vazquez-Cuzco against Plaintiff because of his disability in violation of the NYCHRL because Defendant Vazquez-Cuzco was Plaintiff's direct supervisor.

## COUNT IV

### PERCEIVED DISABILITY DISCRIMINATION IN VIOLATION OF NYCHRL

72. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as if fully set forth herein.

73. Defendants' acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of perceived disability, in violation of the NYCHRL, §§ 8-102(16) and 8-107(a)(a) of the Administrative Code of the City of New York.

74. Pursuant to section 8-107(13)(b) of the NYCHRL, Defendants are strictly liable for the intentional discrimination against Plaintiff based on his perceived disability perpetrated by

Defendant Vazquez-Cuzco in violation of the NYCHRL because Defendant Vazquez-Cuzco was Plaintiff's direct supervisor.

## COUNT V

### FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF NYCHRL

75. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as if fully set forth herein.

76. Defendants' acts, practices, and policies described herein constitute a failure on the part of Defendants to provide Plaintiff with reasonable accommodation of his disability, in violation of the NYCHRL, § 8-107(15) of the Administrative Code of the City of New York.

77. Pursuant to section 8-107(13)(b) of the NYCHRL, Defendants are strictly liable for Defendant Vazquez-Cuzco's intentional failure to provide Plaintiff with reasonable accommodation of his disability in violation of the NYCHRL because Defendant Vazquez-Cuzco was Plaintiff's direct supervisor.

## COUNT VI

### RETALIATION IN VIOLATION OF NYCHRL

78. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as if fully set forth herein.

79. Defendants' acts, practices, and policies described herein constitute retaliation against Plaintiff for requesting reasonable accommodation of his disability, which culminated in his termination of employment, in violation of the NYCHRL, §§ 8-102(16) and 8-107(7)(v) of the Administrative Code of the City of New York.

80. Pursuant to section 8-107(1)(a)(6) of the NYCHRL, Defendant Vazquez-Cuzco is personally liable for her intentional retaliatory treatment against Plaintiff for requesting reasonable

accommodation of his disability, which culminated in his termination of employment, in violation of the NYCHRL because Defendant Vazquez-Cuzco was Plaintiff's direct supervisor.

## **JURY DEMAND**

81. Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. Declare Defendants' conduct complained of herein to be in violation of Plaintiff's rights as secured by the ADA and the NYCHRL;

B. Declare Defendants' acts and practices complained of herein to be willful violations of the ADA and the NYCHRL;

C. Enjoin and refrain permanently Defendants' illegal acts and practices described herein pursuant to the ADA and the NYCHRL;

D. Direct Defendants to make Plaintiff whole for all damages incurred because of Defendants' illegal discriminatory and retaliatory conduct in violation of the ADA and NYCHRL;

E. Award Plaintiff the costs of this action together with reasonable attorneys' fees as provided by the ADA and NYCHRL;

F. Award Plaintiff pre- and post-judgment interest;

G. Grant such further as the Court deems proper and necessary.

Dated: March 16, 2022

        Respectfully submitted,

        LAW OFFICE OF DANIELA NANAU, P.C.

        _____
        DANIELA NANAU

        89-03 Rutledge Avenue
        Glendale, New York 11385
        Telephone: (888) 404-4975
        Facsimile: (718) 998-6916
        E-Mail: dn@danielananau.com

        ATTORNEYS FOR PLAINTIFF