UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

MICHAEL PATTERSON,

        Plaintiff,

      -v-                                     No.  22-CV-2177-LTS

EMBLEMHEALTH INC., and BLANCA
VASQUEZ-CUZCO,

        Defendants.

----------------------------------------------------------x

<u>Memorandum Opinion and Order</u>

      Plaintiff Michael Patterson ("Plaintiff") sues his former employer, EmblemHealth Inc. ("EmblemHealth"), and supervisor, Blanca Vasquez-Cuzco ("Vasquez Cuzco" and together, "Defendants"), for employment discrimination and retaliation, asserting claims under federal and New York City law.   Plaintiff asserts claims against Defendant EmblemHealth for violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 <u>et seq.</u> ("ADA"), and for violations of the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-102, 8-107 <u>et seq.</u> ("NYCHRL").  Plaintiff asserts claims against Defendant Vasquez-Cuzco for violations of the NYCHRL only.

      Defendants move to dismiss the complaint (docket entry no. 1 ("Compl.")) pursuant to Federal Rule of Civil Procedure 12(b)(6).   The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.  The Court has reviewed the parties' submissions carefully and, for the following reasons, grants in part and denies in part Defendants' motion to dismiss.

BACKGROUND[1]

Mr. Patterson worked for EmblemHealth as a Facilitated Enrollment Specialist from March 16, 2020, to September 1, 2020.  (Compl. ¶ 14.)  Prior to his role with EmblemHealth, Plaintiff had been employed by United Healthcare as an enrollment representative for ten years.  (Id. ¶ 15.)  During his previous employment, Plaintiff developed relationships with various individuals at the New York State Department of Labor ("NYS DOL"), who enabled him to enroll unemployed New Yorkers eligible for Medicaid or other publicly-subsidized health care insurance plans into his employer's plans.  (Id. ¶ 16.)  Mr. Patterson intended to use these contacts at the NYS DOL to develop a new pipeline of Medicaid-eligible enrollees for his new employer, EmblemHealth.  (Id. ¶ 17.)  Plaintiff commenced his employment with EmblemHealth roughly one week before then-Governor Andrew Cuomo issued an executive order shuttering non-essential businesses because of the COVID-19 pandemic.  (Id. ¶ 18.)  On his first day, Plaintiff and other new hires reported to EmblemHealth's corporate office, were given laptop computers, and were directed to go home and wait for further instructions due to the public uncertainty surrounding the transmission of COVID-19.  (Id. ¶ 20.)  Mr. Patterson began working from home the following day, on March 17, 2020.  (Id. ¶ 21.)  Plaintiff never worked on-site at the corporate office or at any field offices.  (See generally Compl.)

Plaintiff reported to Defendant Vasquez-Cuzco, a Marketplace Sales Manager at EmblemHealth.  (Id. ¶ 22.)  In or about June 2020, the company announced that enrollment representatives would no longer work from home and would instead be expected to work at field

---

[1]    The following facts, drawn from the Complaint, are taken as true, and all reasonable inferences are resolved in Plaintiff's favor for the purposes of this motion.  Freidus v. Barclays Bank PLC, 734 F.3d 132, 137 (2d Cir. 2013).

offices in the Bronx and upper Manhattan.  (Id. ¶ 23.)  Also in or about June 2020, Plaintiff

informed Defendant Vasquez-Cuzco that he was "experiencing severe on-going respiratory

difficulties that affected his ability to breath[e]," which his primary health care physician

("PCP") believed were caused by COVID-19; and that he had been seeing his PCP since

February 2020 "for help with a severe respiratory condition, which caused him to develop a

constant, deep guttural cough and experience shortness of breath that was so bad [he] felt like he

could not catch his breath and could suffocate."  (Id. ¶¶ 24-25.)

        Initially, Plaintiff's PCP treated him for pneumonia and prescribed antibiotics and

steroids, which improved his cough enough that he was able to avoid hospitalization.  (Id. ¶ 26.)

In or about April 2020, the PCP called to inform him that she believed he was her first patient

with COVID-19.  (Id. ¶ 27.)  During the Spring of 2020, Plaintiff's cough and shortness of breath

persisted; he felt winded after walking short distances, coughed constantly, and lost his voice,

akin to laryngitis; and he regularly panicked at night since he constantly woke up feeling

"suffocate[ed]."  (Id. ¶ 28.)  In or about May 2020, the PCP administered a COVID-19 antibody

test, but the results did not reveal any antibodies from the disease.  (Id. ¶ 30.)  Still, the PCP

believed that his respiratory condition was caused by COVID-19, and she sent Plaintiff to a

pulmonologist and an ear-nose-throat specialist for additional testing and treatment that would

extend to September 2020.  (Id. ¶¶ 31, 34.)  Plaintiff conveyed the foregoing information

regarding his respiratory illness to his supervisor, Defendant Vasquez-Cuzco, during the June

2020 conversation, including his doctor's belief that his condition was caused by COVID-19,

and that his need for specialist care that would extend into September 2020.  (Id. ¶ 34.)

        Plaintiff alleges that Defendant Vasquez-Cuzco understood that he required

"reasonable accommodation" of his disability—the ability to work from home—although neither

he nor Vasquez-Cuzco used that term.  (Id. ¶ 35.)  Defendant Vasquez-Cuzco informed Plaintiff

that she and EmblemHealth would permit him to work from home until all additional testing by

specialists was completed.  (Id. ¶ 36.)  Defendant Vasquez-Cuzco also specifically told Plaintiff

that, under the circumstances he described, it would be a violation of EmblemHealth policy for

him to report to a field office because he could be at a risk of spreading the COVID-19 virus to

others and of worsening his own condition.[2]  (Id. ¶ 37.)  Consequently, Plaintiff continued to

work from home during June, July, and August 2020.  (Id. ¶ 38.)  During these summer months,

Plaintiff requested intermittent medical leave during work hours to attend COVID-19-related

health care appointments, which he refers to as a "reasonable accommodation," although he

again concedes that he never used the term when notifying Defendants of his need for medical

leave.  (Id. ¶ 39.)

Defendant Vasquez-Cuzco did not object to these requests.  (Id. ¶ 40.)  However,

she began to send him reports about his work productivity, which stated that he was expected to

sign up five new enrollees per day.  (Id. ¶ 41.)  During his interviews for the role at

EmblemHealth—prior to the shutdown of non-essential businesses in March 2020—Angel

Rosario, Vice President of Marketplace and Small Groups, had told Plaintiff that enrollment

representatives were expected to meet a weekly quota.  (Id. ¶ 42.)  Plaintiff alleges that, prior to

the shutdown, his enrollee numbers were often much higher than the goals set by EmblemHealth

management due to his relationships with individuals at NYS DOL but that, following the

---

[2]     To determine whether employees such as Patterson could safely return to work at field
offices, EmblemHealth issued a computer-based application to its workforce that required
each employee to report whether they were experiencing symptoms indicating an illness,
such as fever or coughing.  Patterson used the application to report that he suffered from
a severe cough and, when he did so, the application raised a "red flag" indicating that he
was prohibited from working at a field office pursuant to EmblemHealth's policies.
(Compl. ¶ 32-33.)

shutdown, which affected non-essential government agency business at the NYS DOL, there were many days on which Plaintiff did not meet the daily quota of five enrollees.  (Id. ¶¶ 43-44.) Plaintiff alleges that other EmblemHealth enrollment representatives had similar problems during the pandemic and likewise did not meet their quotas.  (Id. ¶ 46.)  No one at EmblemHealth—his supervisor or anyone else—ever informed Plaintiff that he was at risk of losing his job if he failed to sign up five enrollees per day.  (Id. ¶ 47.)  Instead, Defendant Vasquez-Cuzco assured him that she believed his numbers would improve when he returned to work in the field and when the NYS DOL office resumed business.  (Id. ¶ 58.)

Meanwhile, Defendant Vasquez-Cuzco "constantly" told Plaintiff that EmblemHealth required him to continue working from home until he was fully recuperated.  (Id. ¶ 48.)  In one email she sent to Plaintiff on July 27, 2020, she wrote: "As per our phone conversation, your health is very important to us, let's continue to work remotely until you see the Dr. or the coughs disappears [sic]."  (Id. ¶ 49.)  In early August 2020, Defendant Vasquez-Cuzco asked Plaintiff if he believed it was possible for him to return to work in the field by September 16, 2020, and Plaintiff responded that he expected to be done with his specialist appointments by that date.  (Id. ¶¶ 50-51.)

Plaintiff, however, was not given an opportunity to report to work in person.  On September 1, 2020, at 10 a.m., Defendant Vasquez-Cuzco and her supervisor, Annie Wu, with Dianne McGuire from the Human Resources Department, called Plaintiff and informed him that he was being fired.  (Id. ¶ 55-56.)  Defendant Vazquez-Cuzco, allegedly for the first time, told him that his work performance was a "serious problem" and that the performance deficiency was the reason for his termination.  (Id. ¶ 56.)

On or about December 31, 2020, Plaintiff filed a charge with the United States

Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on his disability or perceived disability.  (Id. ¶ 12.)  He received his right-to-sue letter from the EEOC on December 22, 2021, and filed the instant action within 90 days thereof.  (Id. ¶ 13.)  Mr. Patterson now brings six claims: (1) Counts 1 and 2 allege discrimination on the basis of his disability and perceived disability, respectively, in violation of the ADA; (2) Counts 3 and 4 also allege disability and perceived disability discrimination, respectively, in violation of the NYCHRL's analogous provisions; (3) Count 5 alleges a failure to provide reasonable accommodation of his disability, in violation of the NYCHRL; and (4) Count 6 alleges retaliation, as a consequence of requesting reasonable accommodation, in violation of the NYCHRL.  All counts are asserted against Defendant EmblemHealth, and the NYCHRL counts are asserted against Defendant Vazquez-Cuzco as well.  Defendants jointly move to dismiss all counts, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Their principal argument is that Plaintiff has failed to allege plausibly that his condition constituted a disability or that Defendants perceived him to have a disability, as those terms are defined in the corresponding federal and municipal statutes.

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; it must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Under the Rule 12(b)(6) standard, the court accepts as true the non-

conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

Defendants chiefly contend that Plaintiff has not proffered sufficient facts to "allow a conclusion that an alleged condition rises to the level" of a covered disability or a perceived disability.  (See, e.g., docket entry no. 11 ("Def. Mem.") at 11.)  The Court groups Plaintiff's substantively similar counts and addresses each in turn.

Counts I and II: ADA Discrimination Claims

A claim for discrimination under the ADA is subject to the burden-shifting analysis that was established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for claims of discrimination arising under Title VII.  Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir.1999).  In accordance with this familiar standard, to establish a prima facie case under the ADA, Plaintiff must ordinarily show that (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability.  See, e.g., McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013).  If Plaintiff can show these elements, a temporary presumption of discriminatory motive arises.  Kelleher v. Fred A. Cook, Inc., 939 F.3d 465, 468 (2d Cir. 2019).  The burden then shifts to the employer to set forth a non-discriminatory basis for the adverse action.  Id.

The Second Circuit has held that this same "temporary presumption" that "reduces the facts a plaintiff would need to show to defeat a motion for summary judgment prior to the defendant's furnishing of a non-discriminatory motivation . . . also reduces the facts needed to be pleaded under Iqbal."  Littlejohn v. City of New York, 795 F.3d 297, 310 (2d Cir.

2015) (emphasis added).  Accordingly, to state a claim at the pleading stage, a plaintiff must plausibly show "that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Id. at 311.  Thus, Plaintiff here is correct to note that the ordinary pleading standard is relaxed for claims of discrimination under the ADA in that it does not require him to plead a prima facie case under McDonnell Douglas at this stage. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015).  Instead, Plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." Id. (quoting Littlejohn, 795 F.3d at 311).

With this modified standard in mind, the Court notes that Defendants, for the purposes of their motion, at no point contest (1) that EmblemHealth is subject to the ADA, (2) that Plaintiff was qualified to perform the essential functions of a Facilitated Enrollment Specialist with or without reasonable accommodation, or (3) that his termination constituted an adverse employment action.  (See Def. Mem. at 5; see also id. at 5-10.)  Defendants principally challenge the factual allegations underpinning only one element—whether Plaintiff was disabled (Count I) or perceived as disabled (Count II) within the meaning of the ADA.  As relevant here, the ADA defines "disability" as a "physical or mental impairment that substantially limits one or more major life activities of such individual," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A) and (C).  Plaintiff alleges the former in Count I, and alleges, in the alternative, the latter in Count II.

*Count I: Actual Disability*

As to Count I, Defendants' argument is two-fold—that Plaintiff has failed to allege "any facts" plausibly showing he had a condition that substantially limits one or more

major life activities and that, in any event, the alleged "temporary" condition runs afoul of the understanding that temporary disabilities do not trigger the protections of the ADA.  (Def. Mem. 6-8.)  Defendants' characterization of the facts—and the law—is misplaced, as neither argument is meritorious.  First, to meet the definition of actual "disability," Plaintiff must show that he suffers from a physical or mental impairment, the activity claimed to be impaired is a major life activity, and the impairment substantially limits that activity.  Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 147 (2d Cir. 2002).  EEOC regulations note that an impairment "is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."  29 C.F.R. § 1630.2(j)(1)(ii).  Examples of major life activities include, inter alia, breathing and sleeping.  42 U.S.C. § 12102(2)(A).  The impairment "does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."  29 C.F.R. § 1630.2(j)(1)(ii).  Indeed, following the enactment of the 2008 ADA Amendments Act ("ADAA"), Pub. L. No. 110-325, 122 Stat. 3553, which expanded the definition of "disability," the EEOC regulations provide that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA," and "is not meant to be a demanding standard."  29 C.F.R. § 1630.2(j)(1)(i).

Plaintiff alleges that he suffered from "severe on-going respiratory difficulties" that, inter alia, curtailed his ability to breathe, limited his ability to walk even short distances, led to the loss of his voice, and significantly affected his sleep to the point that he "constantly" woke up feeling "suffocate[ed]."  (Compl. ¶¶ 24, 28.)  Plaintiff alleges that he consulted with his PCP numerous times in an effort to diagnose and treat his condition and at one point was prescribed

antibiotics and steroids to evade hospitalization.  (See, e.g., id. ¶¶ 25-27, 30.)  Still, his condition

persisted and remained undiagnosed, so his physician directed him to see a pulmonologist and an

ear-nose-throat specialist for further testing and treatment.  (Id. ¶¶ 30-31.)  According to the

Complaint, Plaintiff sought diagnosis and treatment for this condition from February 2020

through at least September 2020.  (Id. ¶¶ 25, 53.)  The Court finds that Plaintiff has adequately

alleged the existence of a physical impairment—his ongoing respiratory illness—that

substantially limited two statutorily-recognized major life activities, breathing and sleeping, "as

compared to most people in the general population."[3]  29 C.F.R. § 1630.2(j)(1)(ii).  The cases on

which Defendants rely are easily distinguishable on their facts.  See, e.g., Zuckerman v. GW

Acquisition LLC, No. 20-CV-8742-VEC, 2021 WL 4267815, at *11 (S.D.N.Y. Sept. 20, 2021)

("[Plaintiff] includes no facts from which the Court can infer the frequency, duration, or severity

of her difficulties sleeping and concentrating."); Dechberry v. New York City Fire Dep't, 124 F.

Supp. 3d 131, 152 (E.D.N.Y. 2015) (noting that driving and commuting to work are not major

life activities); Cusack v. Delphi Corp., 686 F. Supp. 2d 254, 257 (W.D.N.Y. 2010) (noting that

Plaintiff failed to allege that his depression impaired, "substantially or otherwise, his engagement

---

[3]     Defendants also miss the mark when arguing that Plaintiff cannot be disabled within the
meaning of the statute because his illness "improved when treated" and did not prevent
him from performing his work duties.  (Def. Mem. at 15.)  That the Court should
somehow discount the nature of an illness because it was responsive to treatment or did
not impede job functions runs contrary to the spirit of the ADA itself.  As the EEOC
regulations clearly provide, "[t]he determination of whether an impairment substantially
limits a major life activity shall be made without regard to ameliorative effects of
mitigating measures," "[a]n impairment that is episodic or in remission is a disability if it
would substantially limit a major life activity when active," and "[a]n impairment that
substantially limits one major life activity need not substantially limit other major life
activities in order to be considered a substantially limiting impairment."  29 C.F.R. §
1630.2(j)(1)(vi)-(viii).  The Court further notes that Plaintiff does not allege that the
improvement he experienced eliminated the serious effects of the symptoms altogether.
Rather, he merely alleges that the improvement from the treatment he received enabled
him to avoid hospitalization.

in any major life activity").

Second, it is plainly incorrect as a matter of law that, simply because an impairment that otherwise substantially limits one or more major life activities is temporary, it cannot trigger the protections of the ADA. Indeed, in the Second Circuit's published opinion in Hamilton v. Westchester Cnty., 3 F.4th 86, 93 (2d Cir. 2021), the Court of Appeals "join[ed] the First, Fourth, and Seventh Circuits in holding that under the expanded definition of 'disability' under the ADAAA . . . a short-term injury can qualify as an actionable disability under the ADA." Id. (emphasis in original). The 2008 amendments to the ADA explicitly rejected the standards enunciated in, among others, Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197-98 (2002) (holding that an "impairment's impact must be permanent or long-term"), and Sutton v. United Air Lines, Inc., 527 U.S. 471, 487 (1999) (holding that the ADA "covers only those whose impairments are not mitigated by corrective measures"). See ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008) (expressly naming Supreme Court cases). Put another way, Plaintiff's actual disability claim under the ADA cannot fail solely because he did not allege a permanent or chronic disability. Therefore, the Court finds that, Plaintiff's allegations of severe respiratory difficulties, including "suffocating" episodes, constant coughing, interrupted sleep and loss of voice, are sufficient at this pleading stage to allow the Court to infer that he was disabled within the meaning of the ADA.

As explained above, in addition to alleging disability, job qualification, and an adverse employment action, Plaintiff's pleading must offer "at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn, 795 F.3d at 311. Defendants do not directly address this point in their briefing and have elected instead to focus almost exclusively on the disability prong. The Court concludes that the complaint meets

this lenient threshold requirement.  Plaintiff makes the requisite minimal showing because he

alleges that: (1) Defendant Vasquez-Cuzco's criticisms of his productivity coincided with the

period after he informed her of his illness and the need for additional testing; and, in particular,

(2) she ultimately reversed course after having assured him that she believed his numbers would

improve when he returned to work and when he could work in an ordinary manner with

NYSDOL.[4]  (Compl. ¶¶ 56, 58.)  Plaintiff asserts that the first time that Defendant Vasquez-

Cuzco told him that his work performance was a "serious problem" was when she fired him,

approximately two weeks prior to September 16, 2020, the date by which he was expected to

complete his health care appointments.  (Id. ¶ 56.)  These allegations, taken together, furnish the

"minimal support" required to plausibly allege that EmblemHealth's termination of Plaintiff's

employment was motivated by discriminatory animus toward his disability, as opposed to a non-

discriminatory work-related reason.

### Count II: Perceived Disability

The Court turns next to Plaintiff's claim that Defendants discriminated against

him because they perceived that he was disabled within the meaning of the ADA.  As explained

above, the ADA defines "disability" in one of three ways: (1) a mental or physical impairment

substantially limiting a major life activity, (2) an impairment supported by a "record"

(inapplicable here); or (3) when Plaintiff is "regarded as having [] an impairment."  42 U.S.C. §

12102(1)(A)-(C).  The elements of a claim of discrimination based on perceived disability differ

significantly from those of a claim of discrimination based on an actual disability in that an

individual meets the "regarded as" prong if he demonstrates he has been subjected to an adverse

---

[4]      The Court notes that, according to the Complaint, when Defendant Vasquez-Cuzco asked
Plaintiff whether he would be able to return to the office on September 16, 2020, he
merely confirmed that the testing was to conclude by that date.  (Compl. ¶¶ 50-51.)

employment action because of a perceived physical or mental impairment, "whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A). Moreover, a plaintiff does not have to show the employer had a "reasonable basis" for its perception; the law only requires facts suggesting that the employer did so perceive him.  Id.

Pursuant to this more lenient standard, the facts alleged plausibly lend support to the "regarded as" theory of discrimination.  Plaintiff alleges that he informed Defendant Vasquez-Cuzco in June 2020 of the extent of his respiratory illness and the ways in which it affected, inter alia, his breathing and sleeping, and that he continued to update her on the progress of his condition thereafter.  (See, e.g., Compl. ¶¶ 24, 40, 49.)  Plaintiff requested "intermittent medical leave" in connection with his various health care appointments relating to the condition, which were granted and to which Defendant Vasquez-Cuzco did not object.  (Id. ¶¶ 39-40.)  Although enrollment representatives such as Plaintiff were generally required to work in the field beginning in June 2020, Defendant Vasquez-Cuzco told Plaintiff that his "health is very important to us," that he could "continue to work remotely until [he saw] the Dr. or the coughs disappears [sic]," and asked him whether he could return to work by September 16, 2020—several months after similarly-situated employees began working in the field.  (Id. ¶¶ 23, 49-50.)  These allegations together furnish plausible support for the inference that Defendant Vasquez-Cuzco perceived Plaintiff as having a physical impairment.  The lone exception to the "regarded as" definition of disability under the ADA is for perceived impairment that is both transitory and minor.  42 U.S.C. § 12102(3)(B) (defining a transitory impairment to have an actual or expected duration of six months or less); see also 29 C.F.R. § 1630.15(f).  Here, the condition is alleged to have lasted for more at least six months and was not resolved by the time Plaintiff's employment was terminated, and Plaintiff alleges that his impairment substantially

limited two major life activities, breathing and sleeping.

As to the causation element, for the same reasons as explained above in connection with Plaintiff's claim of discrimination on the basis of an actual impairment, the Court finds that Plaintiff has offered "at least minimal support for the proposition that the employer was motivated by discriminatory intent" with respect to the perceived impairment. Littlejohn, 795 F.3d at 311.  Plaintiff's allegations that Defendant Vasquez-Cuzco criticized his productivity after he informed her of his physical impairment and need for additional testing; and that she reversed course in terminating him after having assured him that she believed his performance numbers would improve, are sufficient at this stage to suggest discriminatory animus toward his perceived disability.

Counts III and IV: NYCHRL Discrimination Claims

Plaintiff's disability discrimination claims under the NYCHRL are analogous to his disability discrimination claims under the ADA, in that they also allege that he was subjected to an adverse employment action because of his disability or his perceived disability.  Because Plaintiff's actual and perceived disability claims are actionable under federal law, the Court need not, and does not, conduct an analysis of each of the elements under the NYCHRL.  As the Second Circuit has held, the Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85, established a "one-way ratchet by which interpretations of state and federal civil rights statutes can serve only as a floor below which the City's Human Rights law cannot fall."  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (internal quotation marks and citation omitted) (emphasis in original).  Therefore, the same analysis of Plaintiff's federal claims applies equally to his discrimination claims under the NYCHRL, and a motion to dismiss as to those claims must be denied for all the reasons discussed above.

<u>Counts V and VI: NYCHRL Failure to Accommodate and Retaliation Claims</u>

Plaintiff's final two claims are brought under the NYCHRL only.  Plaintiff asserts that Defendants failed to accommodate his disability and retaliated against him when he sought reasonable accommodation.

*Count V: Failure to Accommodate*

An employer is liable for a failure to accommodate if: (1) Plaintiff is a person with a disability within the meaning of the NYCHRL; (2) an employer covered by the statute had notice of Plaintiff's disability; (3) with reasonable accommodation, Plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.  <u>McMillan</u>, 711 F.3d at 125–26.  Plaintiff argues that his termination constituted a refusal to make reasonable accommodation.  Defendants advance three arguments—that Plaintiff is not disabled, that he did not request an accommodation, and that, even if he did, the requested was granted, not denied.  For the reasons explained above, the Court finds that Plaintiff has pleaded sufficiently that he was disabled.  Further, Plaintiff need not specifically request a "reasonable accommodation" to trigger the employer's obligation; in fact, the NYCHRL imposes the obligation to provide accommodations "even in the absence of a specific request" so long as the employer knew or should have known about Plaintiff's disability.  See <u>Haight v. NYU Langone Med. Ctr., Inc.</u>, No. 13-CV-04993-LGS, 2014 WL 2933190, at *17 (S.D.N.Y. June 27, 2014) (quoting N.Y. Admin. Code § 8–107(15)(a)).

The Court agrees, however, that Plaintiff fails to state a failure to accommodate claim because the Complaint demonstrates that EmblemHealth made reasonable accommodations.  Plaintiff was permitted to work remotely and attend all of his health care appointments until his termination.  At bottom, Plaintiff's request—to the extent it was <u>not</u>

granted—appears to have been to continue working indefinitely while performing below quota. Such a request is not a reasonable accommodation if the "quantitative production numbers"—as Defendant claims—were a requirement of the Facilitated Enrollment Specialist role. (Def. Mem. at 1.) Plaintiff concedes that, in his interviews for the job at EmblemHealth, he was informed that "enrollment representatives were expected to achieve a weekly quota." (Compl. ¶ 43.) Notably, while Plaintiff alleges that he "is aware that other EmblemHealth enrollment representatives" "did not achieve their enrollment numbers" either, he does <u>not</u> allege that EmblemHealth permitted those employees to stay on. (<u>Id.</u> ¶ 46.) Thus, even construing the Complaint in the light most favorable to Plaintiff, the Court finds that he has not alleged facts plausibly suggesting that he was refused reasonable accommodation on the account of his disability.

*Count VI: Retaliation*

For a retaliation claim under NYCHRL to survive, Plaintiff must plausibly allege (1) that he engaged in a protected activity of which his employer was aware; (2) that he suffered an adverse action that would be reasonably likely to deter a person from engaging in a protected activity; and (3) that there was a causal connection between the protected activity and the action. <u>See</u> <u>Mihalik</u>, 715 F.3d 102, 112 (2d Cir. 2013); <u>Ottoson v. SMBC Leasing & Fin., Inc.</u>, No. 13-CV-1521-JPO, 2020 WL 881992, at *3 (S.D.N.Y. Feb. 24, 2020). The NYCHRL provides that a request for reasonable accommodation constitutes protected activity. <u>Piligian v. Icahn Sch. of Med. at Mount Sinai</u>, 490 F. Supp. 3d 707, 715 (S.D.N.Y. 2020) (citing N.Y.C. Local Law No. 129 (2019) (amending § 8-107(7))). As to the causation element, the NYCHRL only requires that the protected activity be a "motivating factor" in the adverse action, and not its "but-for" cause, as would be required under federal law. <u>Mihalik</u>, 715 F.3d at 115.

Plaintiff has plausibly alleged (1) that he requested reasonable accommodation, in that he asked in June 2020 to complete his health care appointments prior to returning to work in the field, (2) that Defendant Vasquez-Cuzco's subsequent transmission of "productivity reports" and criticism of his performance were actions reasonably likely to deter persons from requesting reasonable accommodation; and (3) that these actions were motivated, at least in part, by his asking for reasonable accommodation.  At this preliminary stage, and given the lenient standard and "broad and remedial purposes" of the NYCHRL, the Court finds that Plaintiff's allegations regarding Defendant Vasquez-Cuzco's focus on and criticism of Plaintiff's productivity, occurring soon after he made his reasonable request to work remotely, are sufficient at the pleading stage to support the requisite inference of retaliatory conduct that would deter a person from making such requests.  See, e.g., Mihalik, 715 F.3d 102, 115 (2d Cir. 2013) (noting that while courts may dismiss NYCHRL claims in "truly insubstantial cases," "even a single comment may be actionable in the proper context" (citation and internal quotation marks omitted)); Xiang v. Eagle Enterprises, LLC, No. 19-CV-1752-PAE, 2020 WL 248941, at *9 (S.D.N.Y. Jan. 16, 2020) ("Based on the plain text of the NYCHRL, and in accord with the view of several other courts in this District, the Court concludes that Xiang has pled the bare minimum to establish that she engaged in protected activity under the NYCHRL on the theory that she was terminated in retaliation for her reasonable accommodation requests of working from home on days when she had pregnancy-related medical appointments, and for her reasonable accommodation request of maternity leave.").

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss is granted as to the failure to provide reasonable accommodation under the NYCHRL claim (Count V), and denied in all other respects.  This Memorandum Order resolves docket entry no. 9.  Should Plaintiff seek to pursue the dismissed claim, he is to make a motion for leave to amend the Complaint by **September 25, 2023.**  Any such motion must be accompanied by the proposed Second Amended Complaint and a redline of that document against the instant Complaint.

In accordance with Federal Rule of Civil Procedure 12(a)(4)(A), Defendant is directed to file an answer to the Complaint within 14 days of the issuance of this Memorandum Order.  This case will be referred to a Magistrate Judge for general pretrial management.

SO ORDERED.

Dated: New York, New York
        September 1, 2023

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge